**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Peter Sung Ohr, Regional Director of the National Labor Relations Board, Region 13, | ) ) ) | |
| Petitioner, | ) ) | Case No. 18-cv-8414 |
| v. | ) ) | Judge: Ruben Castillo |
| International Union of Operating Engineers, Local 150, AFL-CIO, | ) ) ) | Magistrate Judge: Jeffrey Cole |
| Respondent. | ) ) | |

**LOCAL 150's BRIEF IN OPPOSITION TO PETITION FOR INJUNCTIVE RELIEF**

**Introduction**

Petitioner NLRB Regional Director Peter Ohr seeks an injunction against Local 150's use of banners and an inflatable rat in the course of its labor dispute with Donegal Excavating, Inc. ("Donegal"). The question whether inflatable balloon figures and stationary banners are the equivalent of picketing, and therefore subject to the secondary boycott regulation under Section 8(b)(4) of the NLRA, or protected speech under the First Amendment is well-settled in favor of the Union. Absent the "confrontational sometimes intimidating conduct associated with traditional picketing," bannering raises significant constitutional concerns under the First Amendment which courts and agencies are bound to avoid. *Overstreet v. United Brotherhood of Carpenters and Joiners*, 409 F.3d 1199 (9th Cir. 2005), relying on *DeBartolo Corp. v. Florida Gulf Coast Building & Const.* 485 U.S. 568 (1988). "There is no doubt," moreover, that inflatables such as Local 150's Scabby the Rat "are forms of expression protected by the First Amendment." *Construction and General Laborers Local 330 v. Town of Grand Chute Wisconsin*, 834 F.3d 745, 751 (7th Cir. 2016) ("There is no doubt that the large inflated rubber rats widely used by labor unions to dramatize

their struggles with employers are forms of expression protected by the First Amendment"), *relying on Tucker v. City of Fairfield*, 398 F.3d 456, 462 (6th Cir. 2005); *Int. Union of Operating Engineers, Local 150 v. Orland Park*, 139 F. Supp. 2d 950 (N.D. Ill. 2001) (16-foot inflatable rat is "symbolic speech" protected by the First Amendment). Hence, the Regional Director's Petition should be denied for failure to meet the statutory requirements that there be a "reasonable cause to believe" the Union has violated the NLRA, or that injunctive relief is "just and proper" under traditional equitable principles.

### Statement of Facts

Donegal is primarily an excavation contractor owned by Simon Bradley. The office is located in Burr Ridge, Illinois, and its equipment yard is located in Lemont, Illinois. Donegal employs equipment mechanics, operators, haul truck drivers, and lowboy truck drivers performing excavation and hauling work at various residential and commercial sites in the southwest suburbs, as well as mechanics. A number of Donegal's employees appear to be misclassified as independent contractors despite the fact that they operate Donegal equipment at Donegal jobsites under Donegal supervision. Donegal maintains a second equipment yard at a dump yard called Willco Green, located on 119th Street in Plainfield, Illinois, which is managed by Bradley and Donegal employee Jim Barry. Donegal keeps transfer trucks at Willco Green where some of its employees are assigned to haul construction debris and garbage dumped at Willco Green to various landfills.

Donegal is non-union; it performs work falling under Local 150's craft jurisdiction. In early 2018 Local 150 began visiting various Donegal jobsites to gain an understanding of the employer's work and practices. In May 2018 Local 150 asked a couple of individuals to make application to Donegal because it had placed a sign seeking truck driver applicants on a public street. Meanwhile, Local 150 agents had made contact with various other Donegal employees to assess their interest

in the Union. Employee Billy Hanahan obtained four authorization cards from Donegal coworkers, three in May and one in early June 2018.

Shortly thereafter, Local 150 learned that Donegal was looking for the "rat(s)" who were providing information to the Union about jobsites at which Donegal would be. Hanahan told the Union that he had been questioned about the Union by owner Simon Bradley, Bradley's son Johnny Simpson, and manager William Doherty. The Union backed off further organizational activity, understanding that Donegal was looking to make an example of someone and quell interest in organizing. The Union continued, however, to monitor various jobsites for safety and contamination issues it had previously identified.

On July 9, 2018, Bradley fired Hanahan, telling him he "knew why he was being fired and to have fun with his Union buddies." Local 150 filed an unfair labor practice charge with the NLRB over Hanahan's termination the same day. On July 11, 2018, Local 150 commenced a ULP strike against Donegal and began lawful ambulatory picketing of Donegal's trucks and jobsites.

Despite clear evidence that Hanahan was targeted by Donegal as the rat providing information to the Union, the NLRB ultimately did not find merit to the Hanahan charge. Donegal apparently presented after-acquired evidence of Hanahan's previously undisclosed criminal history and his leaving the site with employee paychecks for a few minutes. Local 150 was unaware of these issues when the charge was filed and therefore agreed to withdraw the charge. Prior to the withdrawal, however, on August 21, 2018, Local 150 filed another ULP charge concerning an employee being required by Bradley to call the police when Elmhurst Chicago Stone ("ECS") where he was dumping a load of concrete loaded him back up with the material in support of Local 150's ambulatory picket that was onsite. On September 6, 2018, Local 150 filed Charge No. 13-CA-226831 after Donegal reduced the work hours of one of its employees because that

3

employee assisted Local 150 and engaged in concerted activity. Local 150 also filed Charge 13-CA-231913 on December 3, 2018, because of Donegal's interrogation of employees about their union activities. On December 14, 2018, the NLRB issued a Consolidated Complaint and Notice of Hearing against Donegal for the conduct alleged in Charge Nos. 13-CA-226831 and 13-CA-231913.

On September 18, 2018, Donegal filed Charge No. 13-CC-22527 in which it alleged that Local 150 violated Sections of 8(b)(4) and Charge No. 13-CP-22526 in which it alleged that Local 150 violated Sections 8(b)(1) and 8(b)(7)(C) of the Act. The Region found merit to Donegal's charges related to the picketing, but dismissed the charges related to the Union's use of Scabby the Rat and its banners. The Union and the Region agreed to settle those charges without an admission of a violation.

By letter dated December 10, 2018, the NLRB directed the Region to reconsider its dismissal of the charges related to the use of rats and banners at the following locations:

> 1) The quarry owned by Boughton Materials beginning in about the middle of July 2018; 2) Elmhurst Chicago Stone's Bollingbrook[sic] and Elmhurst, Illinois facilities beginning on about July 20, 2018; 3) Wilco Green's facility beginning about July 2018; and 4) Andy's Custard's Bollingbrook[sic], Oak Lawn, Naperville and Countryside, Illinois facilities beginning in about August 2018.

## Argument

## I.     Labor Disputes and the First Amendment

The First Amendment to the Constitution of the United States provides that, "Congress shall make no law…abridging the freedom of speech…" U.S. Const. amend. 1. Hence, peaceful picketing is a form of speech entitled to constitutional protection. *Thornhill v. Alabama*, 310 U.S. 88 (1940); *Teamsters Local 695 v. Vogt*, 354 U.S. 284 (1957) (peaceful labor picketing protected by First Amendment); *see, generally,* C. Gregory and H. Katz, *Labor and the Law*, 297 (3d ed.

W.W. Norton, N.Y. 1979) ("The Supreme Court must be understood to have decided that [peaceful picketing] is speech—a pure matter of communicating ideas or information—and nothing more."). As Gregory and Katz explained (*id.* at 299):

> Naturally, the Court concedes that some instances of picketing may be prohibited, as when it is accompanied by violence or threats of violence, fraud, libel, et cetera, just as a state may prohibit any "wrongs" committed through the medium of speech. But when truly conventional speech—and this includes platform and soap-box talks, placards and handbills, newspaper and periodical matter, skywriting and radio addresses, and books like this one—is devoted to the frank discussion of anything, regardless of how annoying or even harmful it may be to some people, it cannot constitutionally be suppressed or penalized as such if it does not contain any element which would place it within one of the settled categories of illegality, such as libel or fraud.

And while the Supreme Court has approved some regulation of picketing, other peaceful forms of labor protest plainly enjoy First Amendment protection. *See, e.g., DeBartolo Corp.*, 485 U.S. 568, 578 (1988) (handbills); *Town of Grand Chute*, 834 F.3d 745, 751 (7th Cir. 2016) ("There is no doubt that the large inflated rubber rats widely used by labor unions to dramatize their struggles with employers are forms of expression protected by the First Amendment"), *relying on Tucker v. City of Fairfield*, 398 F.3d 456, 462 (6th Cir. 2005); *Int. Union of Operating Engineers, Local 150 v. Orland Park*, 139 F. Supp. 2d 950 (N.D. Ill. 2001) (16-foot inflatable rat is "symbolic speech" protected by the First Amendment); *Sheet Metal Workers Int. Assn. Local 15 v. NLRB*, 491 F.3d 429 (D.C. Cir. 2007) (mock funerals); *United Brotherhood of Carpenters and Joiners Local 1506*, 355 NLRB 797 (2010) (banners).

The Supreme Court confronted the question whether the secondary boycott prohibitions of Section 8(b)(4) were unconstitutional under the First Amendment in *DeBartolo*, 485 U.S. at 574-575. In that case, the unions distributed handbills at shopping mall entrances urging customers not to shop at the mall because one tenant paid non-union construction workers substandard wages.

*Id.* at 570-571. The unions did not picket or otherwise patrol the mall entrances while handbilling. *Id.* at 571.

Agreeing with the Court of Appeals, the Supreme Court invoked the "constitutional avoidance" rule of statutory construction applied in *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). *Catholic Bishop* posits that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Id.* at 575. As the Court explained (*id.*):

> This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it. *See Grenada County Supervisors v. Brogden*, 112 U.S. 261, 269, 5 S.Ct. 125, 129, 29 L.Ed. 704 (1884).

The Court agreed with the Court of Appeals because the NLRB's finding that handbilling alone, peacefully and truthfully advising the public of the existence of a labor dispute, without picketing or patrolling, "poses serious questions of the validity of § 8(b)(4) under the First Amendment." *DeBartolo*, 485 U.S. at 575-576. "On its face this was expressive activity, arguing that substandard wages should be opposed by abstaining from shopping in a mall where such wages were paid." *Id.* at 576. "Had the union simply been leafletting the public generally,…there is little doubt that legislative proscription of such leaflets would pose a substantial issue of validity under the First Amendment." *Id.* Hence, the Court was "quite sure" it "must independently inquire whether there is another interpretation not raising these serious constitutional concerns, that may fairly be ascribed to § 8(b)(4)(ii)(B)." *Id.* at 577.

The Court thus framed the issue as "whether handbilling such as involved here must be held to 'threaten, coerce, or restrain any person' to cease doing business with another, within the

6

meaning of § 8(b)(4)(ii)(B)." *Id.* at 578. The Court held it did not, because "more than mere persuasion is necessary to prove a violation of § 8(b)(4)(ii)(B)." Indeed, under Supreme Court law, it is "untenable" that "<u>any</u> kind of handbilling, picketing, or other appeals to a secondary employer to cease doing business with the employer involved in the labor dispute is coercion" under Section 8(b)(4) because it succeeds in causing them to lose business. *Id.*

Since at least 2007, the federal courts and ultimately the NLRB have applied the principles of *DeBartolo* to distinguish between "picketing" and its confrontational nature and other expressive conduct like handbilling and bannering to avoid the First Amendment problem.[1] In *Sheet Metal Workers' Int. Ass'n. Local 15 v. NLRB*, 491 F.3d 429, 437-438 (D.C. Cir. 2007), the Court found that a "mock funeral" procession accompanied by a 16-foot-tall inflated balloon rat and handbilling outside a hospital "was a combination of street theater and handbilling" and was not the "functional equivalent" of picketing and therefore outside the scope of Section 8(b)(4). It had none of the "coercive" characteristics of picketing, did not physically or verbally confront hospital patrons, nor patrol the area "in the sense of creating a symbolic barrier" to those who would enter the hospital. *Id.* Nor was it "signal picketing" with an "implicit instruction" to union members. Like the Supreme Court's "abortion cases," the Court found the union's conduct "fully consistent" with those. *Madsen v. Women's Health Center Inc.*, 512 U.S. 753 (1994), and *Hill v. Colorado*, 530 U.S. 703 (2000). The union's videotape "shows the mock funeral was a quiet affair, not at all like the charged atmosphere surrounding the abortion protests in *Madsen*."

---

[1] In several cases, the Board dabbled with theories that various forms of expressive conduct amounted to the "functional equivalent" of picketing, but abandoned that approach after the federal courts rejected it. *See, e.g., Overstreet v. United Brotherhood of Carpenters and Joiners*, 2003 U.S. Dist. LEXIS 19854 (S.D. Cal. 2003), *aff'd.*, 409 F.3d 1199 (9th Cir. 2005); *Benson v. Carpenters Local 184*, 337 F.Supp.2d 1275 (D. Utah 2004) (denying injunction against display of banners and peaceful distribution of leaflets); *Kohn v. Southwest Regional Council of Carpenters*, 289 F.Supp.2d 1155 (C.D. Cal. 2003) (denying injunction against display of banners at jobsite as unlikely to succeed on the merits).

The NLRB itself finally adhered to the *DeBartolo* principles in finding stationary banners outside the scope of Section 8(b)(4)(ii)(B). In *United Brotherhood of Carpenters and Joiners (Eliason & Knuth)*, 355 NLRB 797 (2010), the Board found that the display of stationary banners did not violate the NLRA prohibitions making it an unfair labor practice "to threaten, coerce, or restrain" persons under Section 8(b)(4). Display of stationary banners constituted neither picketing nor otherwise coercive non-picketing conduct. Relying on the constitutional avoidance doctrine applied in *DeBartolo*, the Board majority made clear that to rule otherwise would create a conflict with the First Amendment. Two Board members dissented, saying that banners were the "confrontational equivalent of picketing," but that theory has never been accepted by the NLRB.

## II.     The Court Should Deny the Petition for Injunctive Relief.

Section 10(l) of the NLRA requires the Board's Regional Directors to seek injunctive relief in federal court where there is "reasonable cause to believe" an unfair labor practice charge is true and a complaint should issue. 29 U.S.C. § 160(l). Contrary to the provisions of the Norris-LaGuardia Act which otherwise prohibit federal courts from entering injunctions in labor disputes, *Burlington Northern v. BMWE*, 481 U.S. 429 (1987), 29 U.S.C. § 101, *et seq.*, the NLRA states that district courts "shall have jurisdiction to grant such injunctive relief…as it deems just and proper." *Id.*

This "just and proper" requirement requires a Regional Director to meet the four prongs of what they have described as the "traditional test in equity." *Lineback v. Chauffeurs, Teamsters, and Helpers Local 414*, 513 F.Supp.2d 988, 991 (N.D. Ind. 2007); *Kinney v. International Union of Operating Engineers, Local 150*, 994 F.2d 1271 (7th Cir. 1993). The four equitable prongs of the traditional test in equity are (*Lineback*, 513 F.Supp.2d at 991):

(1) Whether the Petitioner has a reasonable likelihood of success on the merits;
(2) Whether the Petitioner has an adequate remedy at law, or whether it would be

irreparably harmed if the injunction does not issue; (3) Whether the threatened injury to the Petitioner outweighs the threatened harm an injunction would inflict on the Respondent; and (4) Whether the granting of a preliminary injunction serves the public interest.

While failure to satisfy any of the prongs is sufficient to deny injunctive relief, the Regional Director here can meet none of them.

### A.     The Regional Director Had No Reasonable Cause to Issue a Complaint.

The determination of whether the NLRB's Regional Director had reasonable cause to seek an injunction requires a showing that "disputed issues could be resolved by the Board in favor of the Regional Director's position;" the Regional Director is given the benefit of the doubt. *Lineback*, 513 F.Supp.2d at 990; *Kinney*, 994 F.2d at 1277-1288. The Regional Director had no reasonable cause to issue a complaint because it is contrary to well-established Board law. *Overstreet v. United Brotherhood of Carpenters and Joiners*, 2003 U.S. Dist. LEXIS 19854 (S.D. Cal. 2003), *aff'd. on other gournds*, 409 F.3d 1199 (9th Cir. 2005). Local 150's bannering was in every sense lawful. Section 8(b)(4) generally prohibits labor organizations from picketing secondary employers. It is well settled that the display of large stationary signs, even with the presence of handbillers and an inflatable rat, is not a violation of the Act because bannering, without more, simply is not picketing. *See Eliason and Knuth*, 355 NLRB 797 (2010); *Eliason and Knuth of Denver*, 357 NLRB No. 44 (2011) ("The handbilling alone was undisputedly lawful, and the banner displays alone were lawful under *Eliason* and *Marriott*. Nothing in the record or the law suggests that these two activities in combination were more than the sum of their lawful parts."). Based on this law, the Regional Director dismissed these allegations.

In order for bannering to be converted to unlawful picketing, the Board requires the element of "confrontation" to be present in the union's conduct. *Eliason and Knuth of Denver*, 357 NLRB No. 44 (2011). As the Board notes in the *Eliason* cases, "[t]he core conduct that renders picketing

9

coercive under Section 8(b)(4)(ii)(B) is not simply the holding of signs…, but the combination of carrying of picket signs and persistent patrolling of the picketers back and forth in front of an entrance to a work site, creating a physical or, at least, a symbolic confrontation between the picketers and those entering the worksite." *Id.* The Board further notes that banner displays lack the characteristics of picketing and are not otherwise coercive, particularly when the conduct is absent bullhorn announcements, close proximity to buildings, blocking of ingress and egress, threats, shouting of names, mass gatherings, or the dumping of garbage. *Id.*; *Sheet Metal Workers Intl. Assn.*, 356 NLRB 1290 (2011). None of which is present here.

**B.     Equitable Relief Is Not "Just and Proper" Here.**

**1.     The Regional Director has no likelihood of success on the merits.**

In First Amendment cases, "the likelihood of success on the merits will often be the terminative factor." *Joelner v. Village of Washington Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004). This is because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion), and the "quantification of injury is difficult and damages are therefore not an adequate remedy," *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982). In order to enjoin Local 150, the Court would need to overrule decades of existing precedent that rats and banners are protected by the First Amendment. The Court would also be required to overrule the "constitutional avoidance" principle, as well as the substantive holding of *DeBartolo* that handbills are non-coercive speech; and would need to ignore the Supreme Court's most recent jurisprudence expanding the scope of the protections afforded Americans by the First Amendment.

In *Orland Park*, this Court held that the Union's "large inflatable rat" figure was "non-commercial speech that falls within the purview of the First Amendment guarantee." 139 F.Supp. 2d at 958. The Court added:

> We reach a similar conclusion with respect to Local 150's use of the inflatable rat. The rat has long been a symbol of labor unrest. *See* The New Shorter Oxford English Dictionary 2480 (4th ed. 1993) (defining "rat" as, *inter alia*, "[a] worker who refuses to join a strike or who takes a striker's place"). We easily conclude that a large inflatable rat is protected, symbolic speech. Therefore, we find that Local 150's use of an inflatable rat to publicize its protest with Crystal Tree falls within the category of protected speech.

Every court to consider the question after *Orland Park* has agreed with the core conclusion that the use of the inflatable rat is protected speech. *See, e.g., Tucker v. City of Fairfield*, 398 F.3d 456 (6th Cir. 2005); *State of New Jersey v. DeAngelo*, 197 N.J. 478 (N.J. S.Ct. 2009); *see also Town of Grand Chute*, 834 F.3d at 751 (Posner, J., concurring and dissenting).

Moreover, in order to enter injunctive relief against Local 150, the Court would effectively overrule *DeBartolo*. To interpret Section 8(b)(4) to prohibit rats and banners would pose "a significant risk of infringing on First Amendment rights." *Overstreet*, 409 F.3d at 1212. *DeBartolo* avoided the constitutional question by holding that Section 8(b)(4) does not reach handbilling. This Court should do the same here.

Finally, in order to award the Regional Director injunctive relief, the Court would need to ignore the last decade of Supreme Court First Amendment jurisprudence. Since at least the Court's decision in *Citizen's United v. Federal Election Commission*, 558 U.S. 310, 361 (2010), where it held federal regulation of corporate campaign expenditures based on the speaker's "corporate identity" amounted to an "outright ban on corporate political speech in violation of the First Amendment," the Supreme Court has steadily expanded the scope of First Amendment protections. *See, e.g., Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) (state law restricting sale,

11

disclosure, and use of pharmacy records unconstitutional); *Reed v. Town of Gilbert*, 576 U.S. ___, 135 S.Ct. 2218 (2015) (local sign ordinance limiting advertising unconstitutional content-based regulation of speech).

Perhaps most instructive, however, are the "abortion cases" discussed by the Court in *Sheet Metal Workers Local 15*, 491 F.3d at 436-39. There, the Court distinguished between the confrontation tactics of abortion protesters and their peaceful counterparts. Similarly, in *Snyder v. Phelps*, 562 U.S. 443 (2011), the Court found picketing of veterans' funerals to protest American policies on gays in the military First Amendment-protected. As the Court explained (*id.* at 456):

> Westboro's choice to convey its views in conjunction with Matthew Snyder's funeral made the expression of those views particularly hurtful to many, especially to Matthew's father. The record makes clear that the applicable legal term— "emotional distress"—fails to capture fully the anguish Westboro's choice added to Mr. Snyder's already incalculable grief. But Westboro conducted its picketing peacefully on matters of public concern at a public place adjacent to a public street. Such space occupies a special position in terms of First Amendment protection. We have repeatedly referred to public streets as the archetype of a traditional public forum, noting that time out of mind public streets and sidewalks have been used for public assembly and debate.

The silent protest of Local 150's Scabby the Rat is entitled to no less protection.

### 2. The Regional Director Can Demonstrate No Irreparable Harm.

The legal theory upon which the Region seeks injunctive relief is not now nor has it ever been the law. The dissents in *Eliason & Knuth* and *Brandon Medical Center* were written in 2010. The Board's inaction on these theories for over eight years belies any claim of an emergency; or that waiting for a trial on the merits of its unlikely theory would result in irreparable harm to it or the Company. There is, moreover, an adequate remedy at law available to Donegal under Section 303 of the LMRA. 29 U.S.C. § 187. It provides, in part, that "Whoever shall be injured in his business or property" by conduct defined as an unfair labor practice under Section 8(b)(4) "shall

recover the damages by him sustained." *Id.*; *see, generally, Local 20 Teamsters v. Morton*, 377 U.S. 252 (1964).

### 3. The Harm to the Union Outweighs any Harm to the NLRB.

The exercise of free speech by unions is a fundamental First Amendment right. *Knox v. SEIU Local 1000*, 567 U.S. 298 (2012), *relying on Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 898, 904 (2010). So, too, is the right to organize and join a union. There is no adequate remedy at law for the violation of the Union's First Amendment rights. *Orland Park*, 139 F.Supp.2d at 963; *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937) ("the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer…is a fundamental right.").

The Supreme Court "has long recognized that the First Amendment's guarantee of free speech and assembly have an important role to play in labor disputes." *Allee v. Medrano*, 416 U.S. 802, 829 (1974). The loss of these protections, even for minimal periods of time, constitutes an irreparable injury. *Elrod v. Burns*, 429 U.S. 347 (1976). Moreover, if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional. *Joelner*, 378 F.3d at 620. Stated differently, "injunctions protecting First Amendment freedoms are always in the public interest." *Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012), relying on *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

4.    **The Public Interest Is Best Served by Protecting the First Amendment.**

The protection of Local 150's First Amendment rights to publicize its labor dispute with Donegal serves the public interest more than the Region's efforts to enjoin those rights. The Board itself has found reasonable cause to issue a complaint against Donegal for unlawfully interrogating its employees about their Union activities in support of Local 150 and retaliated against at least one of them for those activities by reducing his hours. Moreover, Bradley routinely attempts to intimidate union members and their supporters by confronting them on public property, repeatedly taking cell phone pictures of them and their license plates.

Donegal is also under investigation by various other government agencies for other unlawful conduct in the regular course of its business. They include the Illinois Department of Labor for wage and hour violations; the U.S. Environmental Protection Agency for illegal dumping of contaminated waste; and numerous violations of OSHA. The public has a right to know about Donegal's nefarious business dealings, and Local 150 has a right to tell it.

## III.    Local 150 Is Entitled to a Preliminary Injunction.

In *Orland Park*, this Court enjoined enforcement of local sign ordinances against Local 150's use of the inflatable rat. As the Court explained (139 F.Supp.2d at 963):

> We enjoin the Forest Preserve from further application of its special activity permit procedure, as presently constituted, to Local 150. We find that the conditions for granting an injunction have been satisfied in that: (1) Local 150 has succeeded on the merits; (2) Local 150 has suffered irreparable injury by the infringement of its constitutional rights; and (3) there is no adequate remedy at law for the loss of freedom of speech.

For these same reasons, the Region's efforts to enjoin the Union's use of rats and banners in this case are an unconstitutional prior restraint, and warrant an injunction in its favor.

**<u>Conclusion</u>**

For all the above reasons, the Court should reject the Region's Petition for injunctive relief against the use of inflatable rats and banners, and enjoin the Region from further efforts to violate Local 150's First Amendment rights.

Dated: December 21, 2018                    Respectfully submitted,


                                            By:    /s/ Dale D. Pierson_____
                                                   One of the Attorneys for Local 150

Attorneys for Local 150:
Dale D. Pierson *(dpierson@local150.org)*
Melinda S. Hensel *(mhensel@local150.org)*
Charles R. Kiser *(ckiser@local150.org)*
Robert A. Paszta *(rpaszta@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record, hereby certifies that on December 21, 2018, he electronically filed the foregoing with the Clerk of Court using the CM/CM/ECF system, which sent notification to the following:

Kevin McCormick
National Labor Relations Board, Region 13
The Dirksen Federal Building
219 South Dearborn Street, Suite 800
Chicago, IL  60604
*kevin.mccormick@nlrb.gov*

The undersigned further certifies that he served the foregoing on the following via electronic mail:

Peter Sung Ohr, Regional Director
National Labor Relations Board, Region 13
The Dirksen Federal Building
219 South Dearborn Street, Suite 800
Chicago, IL  60604
*peter.ohr@nlrb.gov*

By:  /s/ Dale D. Pierson
    One of the Attorneys for Local 150

Attorneys for Local 150:
Dale D. Pierson *(dpierson@local150.org)*
Melinda S. Hensel *(mhensel@local150.org)*
Charles R. Kiser *(ckiser@local150.org)*
Robert A. Paszta *(rpaszta@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647