UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER SUNG OHR, REGIONAL DIRECTOR OF REGION 13 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD <br><br> **Petitioner** <br><br> v. <br><br> INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO <br><br> **Respondent** | Civil No. 1:18-cv-08414 <br><br> Judge: Ruben Castillo <br> Magistrate: Jeffrey Cole |

## REPLY IN FURTHER SUPPORT OF PETITION FOR PRELIMINARY INJUNCTION UNDER SECTION 10(L) OF THE NATIONAL LABOR RELATIONS ACT

### I. STATEMENT OF THE CASE

On December 21, 2018, the Petitioner, the Regional Director of Region 13 of the National Labor Relations Board (Board), for and on behalf of the Board, initiated this proceeding pursuant to Section 10(l) of the National Labor Relations Act, as amended, 29 U.S.C. Section 160(l). This petition seeks to temporarily enjoin the International Union of Operating Engineers, Local 150, AFL-CIO (Respondent or Union), a statutory labor organization, from engaging in an unlawful "secondary boycott" against Donegal Services LLC (Charging Party Donegal) and Ross Builders, Inc. (Charging Party Ross), pending final disposition of an unfair labor practice charge in NLRB Case 13-CP-227526; 13-CC-227527; 13-CC-231597; and 13-CC- 233109 that were filed on September 18, September 18, November 26, and December 20, 2018, respectively, which is currently pending before the Board. The petition is predicated on Petitioner's

conclusion that there is both reasonable cause to believe, as well as a good likelihood of success on the merits of the administrative proceeding before the Board, that Respondent has engaged in, and is engaging in, unfair labor practices that are proscribed by Sections 8(b)(4)(i)(ii)(B) and 8(b)(7)(C) of the Act, 29 U.S.C. § 158 (b)(4)(i)(ii)(B). Petitioner further contends that granting a temporary injunction in this matter is "just and proper" under traditional equitable criteria.

This request is made with full knowledge of a First Amendment defense raised by Respondent. However, as explained more fully infra, under Section 10(l) of the Act the Court clearly has <u>no</u> statutory jurisdiction to pass on the merits of either the Regional Director's theory of violation or on the First Amendment defense of the Respondent. Those are issues committed to the <u>exclusive</u> jurisdiction of the Board in the underlying administrative proceeding, subject to circuit court review. The Court's limited jurisdiction is mandated by the statutory structure of Section 10(l) as contemplated by the United States Congress.

## II. THE STATUTORY SCHEME PURSUANT TO WHICH THE INJUNCTION IS BEING SOUGHT: THE SECTION 10(l) STANDARDS

The statutory language under Section 10(l) of the Act, 29 U.S.C. Section 160(l), if the Regional Director has reasonable cause to believe a violation of Section 8(b)(4)(B) has occurred, he or she must petition a United States District Court for an injunction. The filing for an injunction is mandatory and does not lie in the discretion of the Regional Director. [1]

---

[1] Section 10(l) of the Act provides as follows:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph . . . 8(b)(4)(B), the preliminary investigation of such charge shall be made forthwith… If, after such investigation, the officer or regional attorney to whom the matter may be referred has a reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board petition any Unites States district court within any district where the unfair labor practice in question occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief of temporary restraining order as it deems just and proper, notwithstanding any other provision of law…. 29 U.S.C. § 160(l), as amended.

In determining whether to issue an injunction under Section 10(l), the Court must apply a two-stage, albeit somewhat overlapping, inquiry. *Kinney v. International Union of Operating Engineers, Local 150*, 994 F.2d 1271, 1275 (7th Cir. 1993). First, the Court must assess whether the Board has reasonable cause to believe a secondary boycott has occurred or is occurring, thereby requiring the Board to seek an injunction. *Id*. Second, the "just and proper" rubric of Section 10(l) compels the Court to apply the traditional four-part test in equity for determining whether injunctive relief is appropriate. *Id*.

The Seventh Circuit has observed that "[t]he statutory standard of 'reasonable cause' is satisfied if there is a showing of factual issues which must be resolved by the Board. Section 10(l) commands the courts to disregard their traditional reluctance to issue preliminary injunctions when there is a substantial conflict in the evidence." *Squillacote v. Graphic Arts (Graphic Arts II)*, 540 F.2d 853, 858 (7th Cir. 1976). This Court has stated that where there are disputed issues of fact, the Petitioner should be given the benefit of the doubt. *Kinney v. Chicago and Northeast Illinois District Council United Brotherhood of Carpenters and Joiners of America*, 825 F. Supp. 843, 848 (N.D. Ill. 1993). In addition, the legal theory upon which Petitioner bases the belief of an unfair labor practice need not be finally and conclusively established. See *Graphic Arts II*, 540 F.2d at 858. Accord: *Pye v. Teamsters Local Union No. 122*, 61 F.3d 1013, 1023-1024 (1st Cir. 1995) and the cases cited therein. Where the issue is one of first impression, and the Regional Director sets forth a cogent theory of violation, "it would be most improper for the District Court here to dismiss the …charges as being insubstantial." *Boire v. International Brotherhood of Teamsters*, 479 F.2d 778, 801 (5th Cir.), reh. and reh. en banc denied, 480 F.2d 924 (1973). Thus, in determining whether reasonable cause exists, the Court does not decide the merits of the underlying unfair labor practice charge;

rather, the merits of the dispute is reserved to the exclusive jurisdiction of the Board. See *Madden v. International Hod Carriers*, 277 F.2d 688, 690 (7th Cir.). It is reversible error for a district court under Section 10(l) to pass on the merits of the dispute. See *Solien v. United Steelworkers of America*, 593 F.2d 82, 87 (8th Cir. 1979). Where a district court operates outside of the limited jurisdiction granted by Section 10(l), the court acts improperly. See *Compton v. National Maritime Union of America*, 533 F.2d 1270, 1276-1277 (1st Cir. 1976).

Applying a very lenient standard, once the Board shows reasonable cause, the Court must grant an injunction upon its finding that such relief is "just and proper." Squillacote v. *Graphic Arts I*, 513 F.2d 1017, 1023 (7th Cir. 1975). In making this determination, the Court must use the traditional four-part equitable analysis applicable to injunctions as more fully described below and set forth in *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1566-67 (7th Cir. 1996): (1) no adequate remedy at law; (2) irreparable harm absent an injunction that exceeds the harm suffered by the other party as a result of the injunction; (3) a reasonable likelihood of success of the merits of the administrative proceeding; and (4) harm to the public interest stemming from the injunction that is tolerable in light of the benefits achieved by the relief. In applying these standards, it is important to note that the Seventh Circuit, in upholding a Section 10(l) injunction under traditional equitable criteria, has commented, "Congress, acting on behalf of the public, has unambiguously denounced secondary boycotts." *Kinney v. International Union of Operating Engineers, Local 150*, 994 F.2d at 1280.

### III. STATEMENT OF THE FACTS

The unfair labor practices underlying the instant petition center around a primary labor dispute the Union has with Donegal Services. Donegal Services is located in Lemont, Illinois, and engages in the business of residential demolition, excavating, sewer, and water installation.

Donegal Services does not have a labor agreement with the Respondent.

Donegal Services does business with various vendors and suppliers including Greenscape Homes, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone (ECS), Willco Green, Andy's Frozen Custard, and Ross Builders. All of Donegal's vendors and suppliers are neutral employers and have nothing to do with Respondent's labor dispute with Donegal.

On July 9, 2018, the Union filed an unfair labor practice charge against Donegal Services with the National Labor Relations Board.

Since around July 10, 2018 and continuing, Respondent has engaged in a campaign against Donegal Services by erecting inflatable rats and banners in front of or near sites where Donegal performs services including all of the businesses listed above. The inflatable rats are typically placed in front of or near the entrance to the job site, are around 12 feet tall, and hold a banner. The banners are directed toward the eight vendors and suppliers of Donegal. The banners typically read "shame on [secondary employer] for using a rat contractor." On some occasions, people with picket signs stood in the area of the inflatable rat. However, there is no patrolling at the sites.

In furtherance of its labor dispute with Donegal, Respondent has followed the trucks of Donegal Services to the various job sites. Once there, representatives of the Respondent would stand outside with signs that read, "on strike for unfair labor practices against Donegal Services." At the same time, Respondent has used "salts" by having organizer employees obtain employment with Donegal to organize its employees. Various agents of Respondent have repeatedly shouted to Donegal owner Simon Bradley and others that the strike would end if he just recognized the Respondent and signed a contract with them.

On one occasion, on or about July 17, 2018, Respondent directly interfered with the work performed by Boughton Materials for Donegal Services. An agent for the union instructed one of the Boughton Materials operators to not load Donegal Services trucks with stone. This interference also occurred on September 14, 2018, when Tony Deliberto, union business agent, threatened Boughton Materials that there would be picketing if Boughton continued to load another contractor to picket up material for Donegal.

The Union engaged in this activity for more than 30 days without filing an RC petition with the National Labor Relations Board.

IV. **LEGAL ARGUMENT**

A. **There is Reasonable Cause to Believe that Respondent has violated the Act.**

<u>1. The Union's erection of a large banner misleadingly claiming a labor dispute with the neutral, as well as the Union's use of a large inflatable rat was tantamount to unlawful secondary picketing.</u>

Section 8(b)(4)(i) and (ii)(B) makes it unlawful for a labor organization or its agents: (i) to induce or encourage employees to withhold their services from their employer or (ii) to threaten, coerce, or restrain any person engaged in commerce, where an object of the conduct is to force or require any person to cease doing business with any other person.[2] Concern over unions pressuring neutral, secondary employers prompted Section 8(b)(4)(B), which is meant to simultaneously protect unions' right to exert legitimate pressure on employers with whom they have a primary labor dispute, and to shield neutral businesses from labor disputes not their own.[3]

---

[2] 29 U.S.C. § 158(b)(4)(i) & (ii)(B).

[3] *NLRB v. Operating Engineers Local 825 (Burns & Roe, Inc.)*, 400 U.S. 297, 302-303 (1971); *see also NLRB v. Denver Building and Construction Trades Council*, 341 U.S. 675, 692 (1951).

The Board has found a wide array of conduct aimed at employees of neutral employers to constitute unlawful inducement or encouragement to cease work in violation of Section 8(b)(4)(i)(B). While traditional picketing at the premises of a neutral employer has long been held to violate Section 8(b)(4)(i)(B),[4] the Board and courts have also held that union activity at a neutral's premises that falls short of traditional picketing may still send a "signal" to a neutral's employees that they should withhold their services. For example, in *Electrical Workers Local 98 (Telephone Man)*, a union agent stationed himself at the neutral gate at a construction site with a sign hanging around his neck that read "observer" and, when "conveniently flipped over," revealed language indicating that the primary employer did not pay appropriate wages.[5] The Board concluded that the agent was not a benign observer but was rather engaged in unlawful signal picketing.[6] Similarly, in *Sheet Metal Workers Local 19 (Delcard Associates)*, the Board affirmed the ALJ's conclusion that a union engaged in unlawful signal picketing by posting an agent in a rat costume near a neutral gate.[7] By using a rat costume, the union "intentionally sought to create the impression that this was an unfair job," and thereby unlawfully induced and encouraged neutral employees to cease work.[8]

---

[4] *Laborers Eastern Regional Organizing Fund (Ranches at Mt. Sinai)*, 346 NLRB 1251, 1253 (2006) (patrolling and picketing at construction site when only neutrals' employees would be present establishes unlawful inducement and encouragement); *Service Employees Local 525 (General Maintenance Co.)*, 329 NLRB 638, 638-39 & n.10 (1999) (picketing at neutral employers' premises has the "foreseeable consequence" of unlawfully inducing or encouraging neutral's employees to withhold their labor), *affirmed*, 52 Fed. App'x 357 (9th Cir. 2002); *see also Electrical Workers Local 501 v. NLRB (Samuel Langer)*, 341 U.S. 694, 699-704 (1951) (peaceful picketing at construction site where neutral was present was unlawful inducement or encouragement to neutral's employees to withhold their labor).

[5] 327 NLRB 593, 593 (1999).

[6] *Id.*

[7] 316 NLRB 426, 437-38 (1995), *affirmed in relevant part*, 154 F.3d 137 (3d Cir. 1998).

[8] *Id.* at 438. *See also Warshawsky & Co. v. NLRB*, 182 F.3d 948, 953-54 (D.C. Cir. 1999) (handbilling decrying primary employer's substandard wages and benefits, that took place on access road to construction site at times when only

In determining what exactly constitutes unlawful "threat[s], coerc[ion], or restrain[t]" under Section 8(b)(4)(ii)(B), the Supreme Court has determined that while handbilling at a neutral employer's business is lawful, picketing urging a boycott of the neutral employer is coercive and therefore unlawful.[9] That is because, the Court explained, "picketing is a mixture of conduct and communication and the conduct element often provides the most persuasive deterrent to third persons about to enter a business establishment."[10] Handbilling, by contrast, relies solely on the persuasive force of the idea within the handbill, rather than the confrontational element inherent in picketing.[11]

The Board and courts have historically defined picketing in a very broad and flexible manner.[12] Patrolling and the carrying of picket signs have never been prerequisites to establish picketing.[13] The Board and courts have found a variety of conduct to be picketing or tantamount to picketing, including: planting signs in a snowbank and then watching the signs from a parked car[14]; posting stationary agents with signs near an employer's entrance[15]; disorderly conduct in

---

neutral employees would be present, constituted unlawful inducement and encouragement), *certiorari denied*, 529 U.S. 1003 (2000).

[9] *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council (DeBartolo II)*, 485 U.S. 568, 579-80 (1988) (citing *NLRB v. Retail Clerks Local 1001 (Safeco Title Ins. Co.)*, 447 U.S. 607, 607 (1980)).

[10] *DeBartolo,* 485 U.S. at 580 (internal citations and quotation marks omitted).

[11] *Id.*

[12] *See Eliason & Knuth*, 355 NLRB at 815 (Members Schaumber and Hayes, dissenting). *See also Lumber & Sawmill Workers Local Union No. 2792 (Stoltze Land & Lumber)*, 156 NLRB 388, 394 (1965); *Mine Workers District 2 (Jeddo Coal Co.)*, 334 NLRB 677, 686 (2001); *Service Employees Local 87 (Trinity Maintenance)*, 312 NLRB 715, 743 (1993), *enforced memorandum*, 103 F.3d 139 (9th Cir. 1996); *Lawrence Typographical Union 570 (Kansas Color Press)*, 169 NLRB 279, 283 (1968), *enforced*, 402 F.2d 452 (10th Cir. 1968).

[13] *Eliason & Knuth*, 355 NLRB at 814-15 (citing, inter alia, *Service Employees Local 87 (Trinity Maintenance)*, 312 NLRB at 743, 746); *Cf. DeBartolo II*, 485 U.S. at 571 ("the union peacefully distributed the handbills without any accompanying picketing *or patrolling*") (emphasis added).

[14] *NLRB v. Teamsters Local 182 (Woodward Motors)*, 314 F.2d 53 (2d Cir. 1963)*, enforcing*, 135 NLRB 851 (1962).

front of a neutral's business, including attaching a banner to the neutral's building[16]; and the massed gathering of strikers and community members without picket signs or placards in a neutral hotel's parking lot where strikebreakers were staying.[17]

Other conduct that the Board has found was not picketing but nevertheless coercive within the meaning of Section 8(b)(4)(ii)(B) includes broadcasting a message at extremely high volume through loudspeakers facing a neutral condominium building[18]; throwing bags full of trash into a building's lobby[19]; and 20-70 union members marching in an elliptical pattern without signs while some distributed handbills.[20] In the latter case, the Board noted that the union's conduct had "overstepped the bounds of propriety and went beyond persuasion so that it became coercive to a very substantial degree."[21]

Here, the Regional Director has reasonable cause to believe that Respondent's entire course of conduct directed at Greenscape Homes, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone (ECS), Willco Green, Andy's Frozen Custard, and Ross Builders was tantamount to unlawful picketing and signal picketing. The object of the

---

[15] *Jeddo Coal Co.*, 334 NLRB at 686. *See also Laborers Local 389 (Calcon Const.)*, 287 NLRB 570, 573 (1987) (union agents standing near stationary sign or sitting in parked van with sign on outside of van, constitutes picketing); *Painters District Council 9 (We're Associates)*, 329 NLRB 140, 142 (1999) ("where groups of men are gathered around a sign … they are engaged in picketing") (internal citations omitted).

[16] *Trinity Maintenance*, 312 NLRB at 746.

[17] *Mine Workers (New Beckley Mining)*, 304 NLRB 71, 72 (1991), *enforced*, 977 F.2d 1470 (D.C. Cir. 1992).

[18] *Carpenters (Society Hill Towers Owners' Assn.)*, 335 NLRB 814, 820-23 (2001), *enforced*, 50 F. App'x 88 (3d Cir. 2002).

[19] *Service Employees Local 525 (General Maintenance Co.)*, 329 NLRB 638, 664-65, 680 (1999), *affirmed*, 52 F. App'x 357 (9th Cir. 2002).

[20] *Service Employees Local 399 (William J. Burns Agency)*, 136 NLRB 431, 436-37 (1962) (two members of the Board majority would, in fact, have labeled the union's conduct "picketing").

[21] *Id.*

Respondent's conduct is clearly for those businesses to cease doing business with Donegal. Respondent already succeeded when its agents instructed employees of Boughton Materials to stop loading Donegal trucks and threatened picketing.

> 2. Even if this conduct was not tantamount to picketing, it was nevertheless unlawfully coercive and not shielded by the First Amendment because the Union was engaged in labor and/or commercial speech, both of which are entitled to lesser constitutional protection.

Respondent has and will argue that its conduct is protected by the First Amendment. Because the Union here engaged in conduct that was tantamount to picketing, First Amendment concerns are not implicated, inasmuch as it is settled law that the First Amendment does not shield unlawful secondary picketing.[22] The Supreme Court has long recognized that in the "special context of labor disputes," speech is "subject to a number of restrictions."[23] In Section 8(b)(4), Congress sought to prohibit the "substantive evil" of the secondary boycott, and the Supreme Court has recognized that the First Amendment does not shield conduct that falls afoul of that prohibition.[24] As the Tenth Circuit has observed, "[t]he constitutional right of free speech and free press postulates the authority of Congress to enact legislation reasonably adapted to the protection of interstate commerce against harmful encroachments arising out of secondary boycotts."[25]

---

[22] *DeBartolo II*, 485 U.S. at 579-80; *Safeco Title Ins. Co.*, 447 U.S. at 607.

[23] *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 763 n.17 (1976).

[24] *International Bhd. of Elec. Workers, Local 501 v. NLRB (Samuel Langer)*, 341 U.S. at 705 (secondary picketing, as well as phone call emphasizing the purpose of the picketing, not protected by the First Amendment); *see also Safeco*, 447 U.S. at 616 ("[a]s applied to picketing that predictably encourages consumers to boycott a secondary business, § 8(b)(4)(ii)(B) imposes no impermissible restrictions upon constitutional protected speech").

[25] *United Brotherhood of Carpenters and Joiners of America v. Sperry*, 170 F.2d 863, 869 (10th Cir. 1948) (placement of neutral employer on blacklist, promulgation of the blacklist, and picketing the neutral employer unprotected by the First Amendment).

In a similar vein, commercial speech is also entitled to less constitutional protection, especially where it does not implicate the public interest.[26] In *DeBartolo II*, the Supreme Court declined to read Section 8(b)(4)(ii)(B) as prohibiting a union's handbilling that pressed the advantages of unionization to the public.[27] In so holding, the Court noted that the union's handbilling did not constitute commercial speech, inasmuch as the handbills did not "advertis[e] the price of a product or argu[e] its merits."[28] However, the Court did not analyze the parameters of commercial speech, and it acknowledged that if a union *did* engage in commercial speech, that speech would be entitled to lesser constitutional protection.[29]

Respondent has cited *United Brotherhood of Carpenters and Joiners (Eliason & Knuth)*[30], and *Sheet Metal Workers Local 15 (Brandon Medical Center)* (*Brandon II*)[31] in support of its argument that its conduct is protected under the First Amendment and the NLRB has recognized this. The Petitioner acknowledges that under these precedents, Respondent's conduct would be lawful, but maintains that these cases restricting the definition of picketing to circumstances where union agents carry picket signs while patrolling, were wrongly decided, inappropriately departed from the Board's previously broad and flexible definition of picketing, and should be overruled. Applying the more reasonable definition of picketing that was in effect before *Eliason & Knuth* and *Brandon II*, the Union's conduct here violated the Act.

### B. Interim Relief is "Just and Proper" Under Traditional Equitable Criteria.

---

[26] *Virginia Citizens Consumer Council*, 425 U.S. at 762-64.

[27] *DeBartolo II*, 485 U.S. at 575-76. The Court also applied the canon of constitutional avoidance because a finding that a union's handbilling violated Section 8(B)(4)(ii)(B) would pose serious questions as to the constitutionality of that provision. *See id.*

[28] *Id.* at 576.

[29] *Id.*

[30] 355 NLRB 797 (2010)
[31] 356 NLRB 1290 (2011)

The "just and proper" requirement for obtaining injunctive relief as interpreted by the Seventh Circuit in *Kinney v. IUOE, Local 150*, *supra*, directs the district court to apply general equitable principles when considering requests for temporary injunctions. The Seventh Circuit reviewed these equitable principles and set forth the applicable burdens of proof in *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1568 (7th Cir. 1996). The four traditional criteria that a party must demonstrate in order to obtain injunctive relief are: (1) no adequate remedy at law, (2) irreparable harm absent an injunction that exceeds the harm suffered by the other party as a result of the injunction, (3) a reasonable likelihood of success on the merits, and (4) harm to the public interest stemming from the injunction that is tolerable in light of the benefits achieved by the relief. *NLRB v. Electro-Voice*, 83 F.3d at 1566-67. Criteria 1 and 4 must be shown by a preponderance of the evidence. Criteria 2 and 3 are subject to a "sliding scale" analysis. *Id*. at 1568. That is, a strong showing of likely success on the merits of the petitioner's case can offset a weak showing of harm to the petitioner, just as a strong showing of harm to the petitioner can offset a weak showing of likely success by the petitioner. *Id*.

With respect to the first element of the traditional four part test, i.e., that there exists no adequate remedy at law, Petitioner submits that the facts as described above establish that there exists no adequate remedy at law and irreparable harm will result if the instant injunction is not granted. Specifically, if Respondent is allowed to continue its unlawful picketing of Greenscape Homes, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone, Willco Green, Andy's Frozen Custard, and Ross Builders, the businesses have no other remedy by which to stop the picketing. The vendors and suppliers have no contracts with the Union and no leverage, other than their relationship with Donegal Services, in which to persuade the Union to cease its campaign of unlawful consumer picketing. These businesses will have no other choice

than to pressure Donegal Services to accede to the Union's demands or face loss of business and good will. See *Union de Tronquistas v. Arlook*, 586 F.2d 872, 878 (1st Cir. 1978). If Respondent's actions are allowed to continue unabated, word will undoubtedly spread that if one wishes to conduct business, one should not do so with the vendors and suppliers of Donegal Services. Without a temporary injunction, Respondent's unfair labor practices will continue until the Board rules on the charges. At that time, any remedy the Board may issue against Respondent will be inadequate, since and Donegal's vendors and supplier's businesses and reputations will be ruined by the notoriety associated with the labor dispute. This consequence is clearly contrary to the intent of Congress and the very purpose of Section 8(b)(4)(B) of the Act.[32] See *NLRB v. Operating Engineers Local 825 (Burns & Roe, Inc.)*, 400 U.S. 297, 302-303 (1971).

With respect to the second element, Petitioner submits that the threatened injury to the Petitioner clearly outweighs the minimal potential harm an injunction will inflict on Respondent. As noted above, failure to issue an injunction will result in the Board processes being rendered ineffective, as well as result in loss of business to Donegal, its vendors and suppliers, and irreversible damage to their reputations and good will. The instant petition merely requests that Respondent be temporarily enjoined from continuing its picketing activities; the Union would be free to engage in other lawful activities during its labor dispute, e.g., engage in pure truthful handbilling against Donegal. In balancing the harms cause by an alleged secondary boycott, and the potential loss of a union's lawful economic weapon, the Seventh Circuit has chosen to maintain industrial peace and prevent the evil of the union secondary boycott. See *Graphic Arts II*, 540 F.2d at 859. The same balance should be drawn in this case, even where the Union

---

[32] 29 U.S.C. Section 151 states, "Experience has further demonstrated that certain practices by some labor organizations, their officers, and members has the intent or the necessary effect of burdening or obstructing commerce by preventing the free flow of goods in commerce through strikes and other forms of industrial unrest or through concerted activities which impair the interest of the public in the free flow of such commerce. The elimination of such practices is a necessary condition to the assurance of the rights herein guaranteed."

claims a First Amendment privilege. See *Solien v. United Steelworkers of America*, 593 F.2d at 88, n. 3.

The third element of the equitable principles to be applied is the likelihood of success on the merits. As has been fully described above, the facts in this case, and the existing Board and court law clearly demonstrate that the Respondent is violating Section 8(b)(4)(i)(ii)(B) in its picketing against Greenscape Homes, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone, Willco Green, Andy's Frozen Custard, and Ross Builders. The evidence and the Regional Director's legal theory clearly present a reasonable likelihood of success on the merits of the administrative proceeding before the Board. The direct evidence of Respondent's confrontational conduct by its posting large banners so that everyone entering could view the message, using a large inflatable rat to denote a labor dispute existed when considered together, constitute "signal picketing" within the meaning of Section 8(b)(4)(ii)(B). In its picketing of the Donegal vendors and suppliers, the Union violated 8(b)(4)(ii)(B) by threatening, coercing and/or restraining by attempting to cause the business to cease doing business with Donegal at all—conduct proscribed by the Seventh Circuit in *Boxhorn's,* and the Supreme Court in *NLRB v. Retail Clerks Local 1001 (Safeco Title Ins. Co.)*, 447 U.S. at 614-615. Similarly, the gauntlet-like effect also constitutes inducement or encouragement of work stoppages of neutral employees under 8(b)(4)(i)(B). See *Electrical Workers (IBEW) Local 501 v. NLRB*, 341 U.S. at 701-702. This element is further enhanced in favor of the Petitioner when it is noted where the district court may <u>not</u> decide the ultimate merits of the Board's unfair labor practice case, including the Union's First Amendment defense, and all reasonable doubts regarding the facts and any asserted novelty of the legal theory should be resolved in favor of the

Petitioner. See *Graphic Arts II*, 540 F.2d at 858; *Pye v. Teamsters Local Union No. 122*, 61 F.3d at 1023-1024; *Solien v. United Steelworkers of America*, 593 F.2d at 88, n. 3.

Finally, granting Petitioner's request for temporary injunctive relief serves the public interest. It would promote the fundamental statutory purposes of the Act of preventing unwarranted burdens to interstate commerce (see 29 U.S.C. Section 151) by temporarily preventing Respondent from persisting in its illegal course of secondary boycott activities, while allowing the Board to utilize its recognized expertise to evaluate the "changing patterns of industrial life" (see *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 266 (1975)) under Section 8(b)(4)(B). The Board's evaluation of the merits of the underlying unfair labor practice proceeding should take place in the absence of ongoing misconduct subject to the protections of Section 10(l) of the Act. See *Kinney v. International Union of Operating Engineers, Local 150*, 994 F.2d at 1280; *Graphic Arts II*, 540 F.2d at 859.

## V.     CONCLUSION

Based on the foregoing, where Petitioner has established that there reasonable cause to believe the Union's alleged conduct violates Section 8(b)(4)(i)(ii)(B) of the Act, and that the requested injunctive relief is "just and proper" under traditional equitable criteria, Petitioner respectfully requests this Court to grant the temporary injunctive relief sought herein, pending the Board's final adjudication of the merits of the underlying administrative proceeding.

**DATED** at Chicago, Illinois this 8th day of January, 2019.

*/s/ Kevin McCormick, filed electronically*
Kevin McCormick
Counsel for Petitioner
National Labor Relations Board, Region 13
219 South Dearborn Street, Suite 808
Chicago, Illinois 60604
(312) 353-7594

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that true and correct copies of the **Reply in Further Support of Petition for Preliminary Injunction Under Section 10(L) of the National Labor Relations Act**, have, this 8th day of January, 2019, been served in the manner indicated upon the following parties of record:

Certified Mail

Jim Sweeney, President
Local 150, IUOE, AFL-CIO
6200 Joliet Road
Countryside, IL 60535

Melinda S. Hensel
Dale D. Pierson
IUOE, Local 150, AFL-CIO
Legal Department
6140 Joliet Road
Countryside, IL 60525-3956

Simon Bradley
Donegal Services, LLC.
13011 Grant Road
Lemont, IL 60439-9367

Scott A. Gore, Esq.
Laner Muchin, Ltd.
515 N. State Street, Suite 2800
Chicago, IL 60654-4688

Craig Ross
Ross Builders, Inc.
23 North Lincoln Street
Hinsdale, IL 60521

                */s/ Kevin McCormick, filed electronically*
                Kevin McCormick
                Counsel for Petitioner
                National Labor Relations Board
                Region 13
                209 South LaSalle Street, Suite 900
                Chicago, Illinois 60604
                (312) 353-7594
                Kevin.Mccormick@nlrb.gov