**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PETER SUNG OHR, REGIONAL DIRECTOR OF REGION 13 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>    vs.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO,<br><br>Respondent.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO,<br><br>Counter-Plaintiff,<br><br>    vs.<br><br>PETER R. ROBB, GENERAL COUNSEL OF THE NATIONAL LABOR RELATIONS BOARD AND THE NATIONAL LABOR RELATIONS BOARD,<br><br>Counter-Defendants. | Civil Action No.: 18-cv-8414<br><br>Judge: Ruben Castillo<br><br>Magistrate Judge: Jeffrey Cole |

**ANSWER TO AMENDED PETITION FOR PRELIMINARY INJUNCTION,**
**AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

    1.    Petitioner is the Regional Director for Region 13 of the Board, an agency of the United States government, for and on behalf of the Board.

    **RESPONSE:** Local 150 admits the allegations of paragraph 1.

    2.    Jurisdiction of this proceeding is conferred upon this Court by Section 10(1) [29 U.S.C. Sec. 160(1)] of the Act.

**RESPONSE:** Local 150 denies the allegations of paragraph 2.

3.    At all times material herein, Respondent, a corporation, has maintained an office and place of business in Countryside, Illinois, where it is now and has been engaged as a labor organization.

**RESPONSE:** Local 150 denies the allegations of paragraph 3, and states further Local

150 is a labor organization under the Act.

4.    On September 18, 2018, Donegal Services, LLC (hereinafter "the Charging Party" or "The Employer"), pursuant to the provisions of the Act, filed a charge with the Board against Respondent in Case 13-CP-227526 alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(1) and 8(b)(7)(C) of the Act. A copy of the charge is attached as Exhibit A.

**RESPONSE:** Local 150 admits the allegations of paragraph 4 concerning the filing of

the unfair labor practice charge but denies the allegations therein.

5.    On September 18, 2018, Charging Party Donegal, pursuant to the provisions of the Act, filed a charge with the Board against Respondent in Case 13-CC-227527 alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(4) of the Act. A copy of the charge is attached as Exhibit B.

**RESPONSE:** Local 150 admits the allegations of paragraph 5 concerning the filing of

the unfair labor practice charge but denies the allegations therein.

6.    On November 26, 2018, Charging Party Donegal, pursuant to the provisions of the Act, filed a charge with the Board against Respondent in Case 13-CC- 231597 alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(4) of the Act. A copy of the charge is attached as Exhibit C.

**RESPONSE:** Local 150 admits the allegations of paragraph 6 concerning the filing of

the unfair labor practice charge but denies the allegations therein.

7.    On December 20, 2018, Ross Builders, Inc. (hereinafter "Charging Party Ross") pursuant to the provisions of the Act, filed a charge with the Board against Respondent in Case 13-CC-233109 alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(4) of the Act.  A copy of the charge is attached as Exhibit D.

**RESPONSE:** Local 150 admits the allegations of paragraph 7 concerning the filing of the

unfair labor practice charge but denies the allegations therein.

2

8.     On December 31, 2018, following a field investigation during which all parties had an opportunity to submit evidence upon the said charges in Cases 13-CP-227526, 13-CC-227527, 13-CC- 231597, and 13-CC-233109 the General Counsel by Regional Director, Peter Sung Ohr, on behalf of the Board, issued an Order Further Consolidating Cases, Amendment to Consolidated Complaint, and Notice of Hearing, pursuant to Section l0(b) of the Act [29 U.S.C. Sec. 160(b)], alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(4)(i)(B), 8(b)(4)(ii)(B) and Section 8(b)(7)(C) of the Act. A copy of the Order Further Consolidating Cases, Amendment to Consolidated Complaint, and Notice of Hearing is attached as Exhibit E.

**RESPONSE:** Local 150 admits that on or about December 31, 2018, the Regional Director issued its Order Further Consolidating Cases, Amended Consolidated Complaint, and Notice of Hearing, but denies the remaining allegations of paragraph 7.  Local 150 states further that on or about October 18, 2018, the Regional Director notified Local 150 that he found merit to some but not all of the allegations in those charges, but dismissed the allegations related to Local 150's use of inflatable rats and banners.  Local 150 states further that on or about October 5, 2018, the Regional Director tendered to Local 150 a Settlement Agreement to which Local 150 agreed and relied upon that settlement in ceasing its picketing against Donegal.

9.     Petitioner has reasonable cause to believe that said charges are true and asserts that there is a likelihood of success that the Regional Director will, in the underlying administrative proceeding in Cases 13-CP-227526, 13-CC-227527, 13-CC- 231597, and 13-CC-233109 establish the following:

**RESPONSE:** Local 150 denies the allegations of paragraph 9.

(a)     At all material times, Charging Party Donegal, an Illinois Corporation with a principal business location in Lemont, Illinois, has been engaged in the business of residential demolition, excavating, sewer, and water.

**RESPONSE:** Local 150 admits the allegations of paragraph 9(a), and states further Donegal is engaged in various other demolition and commercial construction businesses within the occupational jurisdiction of Local 150.

(b)     During the past calendar year ending December 31, 2017, a representative period, Charging Party Donegal purchased and received at its Lemont, Illinois, facility goods valued in excess of $50,000 from points located outside of the State of Illinois.

**RESPONSE:** Local 150 lacks knowledge sufficient to answer paragraph 9(b) and therefore denies it.

(c)     At all material times, Charging Party Donegal has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. [29 U.S.C. 152(2), (6) and (7)].

**RESPONSE:** Local 150 denies the allegations of paragraph 9(c).

(d)     At all material times, Charging Party Ross, an Illinois Corporation with a principal business location in Hinsdale, Illinois, has been engaged in the business of general construction contracting for residential homes.

**RESPONSE:** Local 150 admits the allegations of paragraph 9(d).

(e)     During the past calendar year ending December 31, 2017, a representative period, Charging Party Ross purchased and received at its Hinsdale, Illinois facility goods valued in excess of $50,000 from points located outside of the State of Illinois.

**RESPONSE:** Local 150 lacks sufficient knowledge to answer the allegations of paragraph 9(e) and therefore denies it.

(f)     At all material times, Charging Party Ross has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

**RESPONSE:** Local 150 admits the allegations of paragraph 9(f).

(g)     At all material times, Respondent has been a labor organization within the meaning of Section 2(5) of the Act. [29 U.S.C. 152(5)].

**RESPONSE:** Local 150 admits the allegations of paragraph 9(g).

(h)     At all material times, Tony Deliberto, has served as a business agent for Respondent and has been an agent of Respondent within the meaning of Sections 2(13) and 8(b) of the Act. [29 U.S.C. Sec. 152(13)].

**RESPONSE:** Local 150 admits the allegations of paragraph 9(h).

(i)     From about July to December, 2018, Charging Party Donegal provided commercial services to Greenscape Homes, Provencal Construction, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone (ECS), WillCo Green, Andy's Frozen Custard, and Charging Party Ross.

4

**RESPONSE:** Local 150 admits that Donegal has performed subcontracted construction work for Greenscape Homes, Provencal Construction, Overstreet Builders, Settler's Hill and Andy's Frozen Custard. Local 150 denies the remaining allegations of paragraph 9(i), and states further that Donegal is a customer of Boughton Materials, and Elmhurst Chicago Stone; and that Donegal and WillCo Green are joint employers and/or alter egos of each other, the employees of which are represented by Local 150.

(j) At all material times, Respondent has been engaged in a labor dispute with the Charging Party Donegal.

**RESPONSE:** Local 150 admits the allegations of paragraph 9(j).

(k) At no material time has Respondent been in a labor dispute with Greenscape Homes, Provencal Construction, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone (ECS), Willco Green, Andy's Frozen Custard or Charging Party Ross.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(k).

(l) At no material time has Respondent been certified pursuant to Section 9 [29 U.S.C. Sec. 159] of the Act as the exclusive collective-bargaining representative of the employees of Charging Party Donegal.

**RESPONSE:** Local 150 admits the allegations of paragraph 9(l), but states further that it is the recognized collective bargaining representative under Section 9 of the Act, 29 U.S.C. Sec. 159, of certain Donegal employees working under a contract between WillCo Green and Local 150.

(m) About late July or early August, 2018, Respondent, by an unknown agent, at the Settler's Hill dump site in Kane County, Illinois, appealed to and ordered individuals employed by Settler's Hill to interfere with unloading a Donegal Services truck in support of its dispute with Charging Party Donegal described above in paragraph 9(j).

**RESPONSE:** Local 150 denies the allegations of paragraph 9(m).

(n) About July 17, 2018, Respondent, by unknown agents, at the Boughton Materials quarry, appealed to and ordered individuals employed by Boughton Materials to refuse to load Donegal Services truck in support of its dispute with Charging Party Donegal described above in paragraph 9(j).

**RESPONSE:** Local 150 denies the allegations of paragraph 9(n).

(o)     About September 14, 2018, in support of its dispute with Charging Party Donegal described above in paragraph 9(j), Respondent, by Tony Deliberto, by telephone threatened Boughton Materials with picketing if Boughton continued to allow RSS to pick up material for Charging Party Donegal.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(o).

(p)     About mid-July 2018, Respondent, by its agents: (i) posted a large, inflatable rat near the entrance of Boughton Materials, and (ii) posted a banner which read, "Shame on Boughton Materials for harboring rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(p) and states further the rat

and banner were on public property, at all times peaceful, lawful, and non-coercive.

(q)     Beginning about July 10, 2018, Respondent, by its agents, (i) posted a large, inflatable rat near the entrance of ECS's Bolingbrook and Elmhurst, Illinois, facilities, and (ii) posted a banner which read, "Shame on Elmhurst Chicago Stone for harboring rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(q) and states further the rat

and banner were on public property, at all times peaceful, lawful, and non-coercive.

(r)     Since about July 2018, Respondent, by its agents: (i) posted a large, inflatable rat near the entrance of Wilco Green's Plainfield, Illinois, facility, and (ii) posted a banner which read, "Shame on Wilco Green for harboring rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(r) and states further the rat

and banner were on public property, at all times peaceful, lawful, and non-coercive.

(s)     Beginning about August, 2018, Respondent, by its agents: (i) posted a large, inflatable rat near the entrance of Andy's Frozen Custard Bolingbrook, Oak Lawn, Naperville, and Countryside, Illinois, facilities, and (ii) posted a banner which read, "Shame on Andy's Frozen Custard for using rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(s) but denies posting a rat

or banner at the Bolingbrook facility in August or thereafter and states further Local 150 is no

longer bannering any Andy's location.

(t)     Beginning about September, 2018, Respondent, by its agents: (i) posted a large, inflatable rat near the entrance of Greenscape Homes' Warrenville, Illinois, facility, and (ii) posted

6

a banner which read, "Shame on Greenscape Homes for using rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(t) but states further Local

150 is no longer there.

(u)     Beginning in mid-November, 2018, Respondent, by its agents: (i) posted a large, inflatable rat near the entrance of Provencal Construction's Burr Ridge, Illinois, facility, and (ii) posted a banner which read, "Shame on Provencal Construction for using rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(u) but states further Local

150 is no longer there.

(v)     Beginning about mid-November, 2018, Respondent, by its agents: (i) posted a large; inflatable rat near the entrance of Overstreet Builders' Naperville, Illinois, facility, and (ii) posted a banner which read, "Shame on Overstreet Builders for using rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(v) but states further Local

150 is no longer there.

(w)     Beginning around December 17, 2018, Respondent, by its agents: (i) posted a large, inflatable rat near the entrance of Charging Party Ross' Hinsdale, Illinois, facility, and (ii) posted a banner which read, "Shame on Ross Builders, Inc. for using rat contractors."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(w).

(x)     By the conduct set forth above in paragraphs 9(m) through (w), Respondent has induced or encouraged individuals employed by Greenscape Homes, Provencal Construction, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone (ECS), WillCo Green, Andy's Frozen Custard, Charging Party Ross, and other persons engaged in commerce or in an industry affecting commerce to strike, refuse to handle or work on goods and/or refuse to perform services, and has threatened, coerced, or restrained Greenscape Homes, Provencal Construction, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone (ECS), WillCo Green, Andy's Frozen Custard, Charging Party Ross and other persons engaged in commerce or in industries affecting commerce.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(x).

(y)     An object of Respondent's conduct described above in paragraphs 9(m) through (w) has been in part to force or require Greenscape Homes, Provencal Construction, Overstreet Builders, Boughton Materials, Settler's Hill, Elmhurst Chicago Stone (ECS), WillCo Green, Andy's Frozen Custard, Charging Party Ross, and other persons to cease handling or otherwise dealing in the products of, and to cease doing business with the Charging Party Donegal.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(y).

7

(z)    An object of Respondent's conduct described above in paragraphs 9(m) through (w) has been in part to force or require Charging Party Donegal to recognize or bargain with Respondent as the representative of Charging Party Donegal's employees even though Respondent has not been certified as the representative of the employees under the provisions of Section 9 [29 U.S.C. Sec. 159] of the Act.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(z) and states further that

certain employees of Donegal are represented by Local 150 pursuant to a collective bargaining

agreement with its joint employer, alter ego and/or ally WillCo Green.

(aa)    Since about July 11, 2018, Respondent, by its agents, picketed the Employer at its Lemont, Illinois, facility and at other locations with picket signs stating, "On Strike for Unfair Labor Practices: Donegal Services, LLC."

**RESPONSE:** Local 150 admits the allegations of paragraph 9(aa) but states further that

pursuant to the settlement with the Region, Local 150 ceased its picketing.

(bb)    Since about May, 2018, Respondent engaged in organizational activities among the Unit.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(bb).

(cc)    Respondent engaged in the conduct set forth above in paragraph 9(aa) in order to force or require the Employer to recognize and bargain with Respondent as the representative of certain employees of the Employer.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(cc).

(dd)    At no material time has Respondent been certified by the Board as the collective-bargaining representative of the Charging Party Donegal's employees.

**RESPONSE:** Local 150 admits the allegation of paragraph 9(dd), but states further it is

the recognized collective bargaining representative of certain Donegal employees working under

a contract between WillCo Green and Local 150.

(ee)    Respondent engaged in the conduct described above in paragraph 9(aa), without a valid petition under Section 9(c) of the Act having been filed within a reasonable period of time from the commencement of the picketing described above in paragraph 9(aa).

**RESPONSE:** Local 150 denies the allegations of paragraph 9(ee).

(ff)    By the conduct described above in paragraphs 9(m) through (w), Respondent has been violating Section 8(b)(4)(i)(ii)(B) [29 U.S.C. Sec. 158(b)(4)(i)(ii)(B)] of the Act.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(ff).

(gg)  By the conduct described above in paragraph 9(aa) through (ee), Respondent has been violating Section 8(b)(7)(C) of the Act.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(gg).

(hh)  The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) [29 U.S.C. Sec. 152(6) and (7)] of the Act.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(hh).

(ii)  The unfair labor practices of Respondent described above in paragraph 9(m) – (aa) have taken place within this judicial district.

**RESPONSE:** Local 150 denies committing any unfair labor practices based upon conduct

which may have occurred in this judicial district as alleged in paragraph 9(ii).

(jj)  It may fairly be anticipated that, unless enjoined, Respondent will continue or repeat the acts and conduct described above in paragraphs 9(m) through (aa), or similar or like acts and conduct, in violation of Section 8(b)(4)(ii)(B) of the Act, affecting commerce within the meaning of Section 2(6) and (7) [29 U.S.C. Sec. 152(6) and (7)] of the Act. It is therefore essential, appropriate, and just and proper, for the purpose of effectuating the policies of the Act, and in accordance with the provisions of Section 10(1) thereof, that pending final administrative disposition of the matters involved herein now pending before the Board in NLRB Cases 13-CP-227526, 13-CC-227527, 13-CC-231597 and 13-CC-233109 Respondent be enjoined and restrained from the commission of the acts and conduct alleged above, similar acts and conduct, or repetitions thereof.

**RESPONSE:** Local 150 denies the allegations of paragraph 9(jj).

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

At all relevant times, Local 150's conduct in its protests against Donegal, its alter egos,

allies and customers was protected by the First Amendment to the United States Constitution.

## SECOND AFFIRMATIVE DEFENSE

At all relevant times Local 150's conduct in its protest against Donegal, its alter egos, allies and customers was protected by the NLRA.

## THIRD AFFIRMATIVE DEFENSE

Any claims based upon Local 150's conduct in its protests against Donegal at Settler's Hill, Boughton Materials, ECS, Greenspace, Provencal and Overstreet Builders are barred by the equitable doctrine of Accord and Satisfaction.

## FOURTH AFFIRMATIVE DEFENSE

The NLRB's claims against Local 150's protected conduct related to its peaceful use of inflatable rats and banners are unsupported by existing Constitutional and/or Board law, not based upon a good faith argument to change that law and are therefore sanctionable under Rule 11, Fed.R.Civ.P., and/or the Equal Access to Justice Act (EAJA).

## FIFTH AFFIRMATIVE DEFENSE

At all relevant times, Local 150 has been involved in a primary labor dispute with WillCo Green, Inc. WillCo Green, Inc. is a signatory to a collective bargaining agreement with Local 150, under which the Union has filed numerous grievances and is owed back pay and fringe benefit contributions to the trust funds identified in that agreement.

## SIXTH AFFIRMATIVE DEFENSE

At all relevant times, Local 150 has had a primary labor dispute with Donegal. Local 150 has protested unfair labor practices committed by Donegal, over which Region 13 issued a complaint currently scheduled for hearing on April 4, 2019.

## COUNTERCLAIM FOR INJUNCTIVE RELIEF
## AND DAMAGES

1.     This action arises under the First, Fifth and Fourteenth Amendments to the United States Constitution and under the Civil Rights Act of 1871, 42 U.S.C. § 1983.  This court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3) in that the action arises under the Constitution and laws of the United States.  Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391.

2.     Plaintiff, International Union of Operating Engineers, Local 150 is an unincorporated association and labor organization representing employees engaged in the operation of heavy construction equipment and other industries throughout northern Illinois, northern Indiana and parts of Iowa.  It is headquartered in Countryside, Cook County, Illinois.

3.     Defendant, Peter D. Robb is the General Counsel to the National Labor Relations Board (NLRB), the federal agency authorized to enforce the National Labor Relations Act (NLRA).  As such, he is the chief prosecutor in charge of bringing cases before the National Labor Relations Board (NLRB). Defendant Peter Sung Ohr is the Regional Director of Region 13 of the NLRB, the principal office of which is in Chicago, Illinois, and empowered to act under color of law, the NLRA, its decisions, rules, regulation, custom or usage.

4.     Local 150 has been engaged in a labor dispute with a construction and demolition company known as Donegal Services, LLC ("Donegal"). In September 2018, in order to protest unfair labor practices and other conduct harmful to the Union, its members and the public committed by Donegal, the Union engaged in various forms of protest activity. This protest is a "labor dispute" within the meaning of 29 U.S.C. §§ 113(c) and 152(a).

11

5.      Local 150 established its stationary inflatable rats and banners on public property near Donegal jobsites, suppliers and customers. Those banners customarily read "Shame on [name of Donegal affiliate] for harboring a rat contractor."

6.      As part of its protest, Local 150 inflated a large rat balloon ("Scabby") to publicize its dispute to the public. State law and local regulation requires the Union to limit its rats and banners to public property.

7.      The land on which Local 150 established its rats and banners has at all times been public property.

8.      On September 18, 2018, Donegal filed unfair labor practice charges (Case Nos. 13-CP-227526, 13-CC-227527) against Local 150 accusing the Union of picketing and other violations of the NLRA. On November 26, 2018, Donegal filed an unfair labor practice charge (Case No. 13-CC-231597) which alleged that Local 150's use of inflatable rats and banners violated the secondary boycott provisions of the NLRA.

9.      The NLRA contains no provision purporting to regulate the use of inflatable rats or banners on public land.

10.     Since at least 2000, the federal courts have recognized that inflatable rats are "symbolic speech" protected by the First Amendment to the U.S. Constitution.

11.     Since at least 2010, the NLRB has recognized the use of banners to publicize labor disputes as protected by the NLRA.

12.     The symbol of a rat has been continuously used in the context of labor disputes for almost 200 years and has been recognized as such in various court decisions.

13.     On October 18, 2018, the Regional Director Ohr found merit to the ULP charges filed against Local 150 with respect to its picketing against Donegal. He dismissed "the portion

of the charge alleging that the Union violated the Act through the use of inflatable rats or bannering…"

14.     Meanwhile, on October 5, 2018, the Regional Director tendered to and Local 150 signed a settlement agreement covering the portions of the charges related to the Union's picketing. In reliance on that settlement, Local 150 ceased picketing Donegal and has not resumed that picketing to date.

15.     Local 150's right to assemble and peacefully communicate its labor dispute with Donegal is protected by the First Amendment of the Constitution of the United States of America and Section 7 of the National Labor Relations Act, 29 U.S.C. § 157.

16.     As an agency of the U.S. Government, the NLRB is bound to uphold the First Amendment of the Constitution of the United States of America.

17.     Local 150's communication of its labor dispute posed no safety risks to Donegal, the NLRB, or to the public.

18.     Local 150's communication of its message of its labor dispute with Donegal is protected speech under the First Amendment of the Constitution of the United States of America and Section 7 of the National Labor Relations Act, 29 U.S.C. § 157.  Further, the Union's use of the word "rat" and the inflatable rat are protected by the First Amendment as a means of communicating a union's message of its labor dispute with an employer.

19.     The NLRB has deprived and/or is attempting to deprive Local 150 of its ability to communicate its labor dispute with Donegal in violation of the First Amendment by activities including, but not limited to:

a)     Threatening to enjoin Local 150 for its use of a large inflatable rat to publicize its dispute with Donegal and other employers;

b)     Filing baseless complaints against Local 150 and invoking its administrative processes against the Union's use of rats and banners; and

13

c)      Filing a baseless petition for an injunction and using its administrative process to deny Local 150 its protected right to communicate its labor dispute by means of its inflatable rat

20.      Throughout the relevant time period, Local 150 notified the NLRB of its unlawful violations of Local 150's rights.  The NLRB has failed, however, to cease its unlawful conduct.

21.      By these actions, the Defendants have deprived Local 150 of their rights guaranteed under the First Amendment to the U.S. Constitution in violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

22.      The NLRB has issued or plans to issue more complaints in various of its Regions across at least three states seeking to stop Local 150's protected use of rats and banners.

WHEREFORE, Plaintiff Local 150 respectfully requests this Court:

A.      Enter injunctive relief enjoining the NLRB from unlawfully threatening and/or otherwise interfering with Local 150's rights to engage in Constitutionally protected activity;

B.      Enter injunctive relief enjoining the NLRB from unlawfully prohibiting Local 150 inflating its rat to communicate its labor dispute;

C.      Enter injunctive relief against NLRB from prohibiting, restricting or otherwise restraining Local 150's means of communicating its labor disputes;

D.      Award damages to Local 150 in an amount to be determined by trial;

E.      Award Local 150 punitive damages in an amount to be determined by trial;

F.      Award Local 150 its attorneys' fees and costs; and

G.      Award any other relief which this Court determines to be appropriate.


Dated:  January 8, 2019                           Respectfully submitted,

                                                  INTERNATIONAL UNION OF OPERATING
                                                  ENGINEERS, LOCAL 150, AFL-CIO

                                          By:    s/Dale D. Pierson
                                                  One of Respondent/Counter-Plaintiff's
                                                  Attorneys

14

Attorneys for Respondent/Counter-
Plaintiff

Dale D. Pierson (dpierson@local150.org)
Melinda S. Hensel (mhensel@local150.org)
Charles R. Kiser (ckiser@local150.org)
Robert A. Paszta (rpaszta@local150.org)
Local 150 Legal Department
6140 Joliet Road
Countryside, Illinois 60525
708-579-6663
708-588-1647 fax

### CERTIFICATE OF SERVICE

The undersigned, an attorney of record, hereby certifies that on January 8, 2019, he electronically filed the attached ***Respondent's Answer, Affirmative Defenses and Counterclaim for Injunctive Relief and Damages to Petitioner's Petition for Preliminary Injunction Under Section 10(l) of the National Labor Relations Act***, which sent notice to the following:

Kevin M. McCormick
National Labor Relations Board, Region 13
219 South Dearborn Street, Suite 808
Chicago, IL 60604
(312) 353-7594
Kevin.mccormich@nlrb.gov

INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 150, AFL-CIO

By:  s/Dale D. Pierson
One of Respondent/Counter-Plaintiff's
Attorneys

Attorneys for Respondent/Counter-Plaintiff

Dale D. Pierson (dpierson@local150.org)
Melinda S. Hensel (mhensel@local150.org)
Charles R. Kiser (ckiser@local150.org)
Robert A. Paszta (rpaszta@local150.org)
Local 150 Legal Department
6140 Joliet Road
Countryside, Illinois 60525
708-579-6663
708-588-1647 fax